IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Christopher Counts,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv91 (AJT/IDD) |
| | ) | |
| **A. David Robinson, et al.,** | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Before the Court is a second round of cross-motions for summary judgment filed by the parties in this civil action brought by Christopher Counts, a Wyoming inmate housed within the Virginia Department of Corrections ("VDOC") pursuant to an interstate corrections compact, claiming, as relevant here, that he has been unable to practice Satanism in violation of his rights under the First Amendment, see 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), see 42 U.S.C. § 2000cc-2. [Doc. Nos. 55, 58]. The remaining defendants, A. David Robinson, Harold W. Clarke, Israel Hamilton, Gregory L. Holloway, and William Jackson, have provided Counts, who is proceeding pro se, the notice required under Roseboro v. Garrison, 528 F.2d 309 (8th Cir. 1975), and Local Civil Rule 7(K). [Doc. No. 60]. Counts opposes defendants' renewed motion for summary judgment. [Doc. No. 72]. Neither party has submitted evidence, however, that compels a conclusion different from the Court's previous finding that disputes of material fact preclude summary judgment. Therefore, both motions will be denied.

**I. Procedural History**

The amended complaint alleges that VDOC officials have been ignoring Counts's requests for Satanism to be authorized for practice in VDOC facilities. As a result, Counts

alleges, he cannot practice his faith through individual and group worship, nor can he possess specific faith items, including the Satanic Bible and Satanic Rituals Bible, which are on the VDOC's banned-book list. The activities underlying the complaint took place while Counts was housed at Sussex I State Prison (SISP).

In the Memorandum Opinion ruling on the parties' initial motions for summary judgment, the Court concluded that there were disputes of material fact concerning whether defendants have been imposing a substantial burden on Counts's ability to practice Satanism and, accordingly, denied summary judgment on the First Amendment and RLUIPA claims. For instance, Counts testified that he has submitted numerous requests over the years asking for Satanism to be approved as a religion within the VDOC, but those requests have fallen on deaf ears; meanwhile, defendants attested that Counts has never submitted the paperwork required by VDOC Operating Procedure ("OP") § 841.3. The Court additionally concluded that defendants failed to adequately address Counts's claim that his inability to possess specific religious items substantially burdened his ability to practice Satanism.

## II. The Evidentiary Record

*A. Undisputed Facts*

The official process for an inmate to request that a religion be authorized for practice at VDOC facilities is governed by OP § 841.3, and the process is explained in affidavits submitted by Bernard Morris, the VDOC's contracted religious advisor, and defendant Hamilton, SISP's former warden. An inmate must submit a "request for recognition of a religious group" form (the "religion-authorization" form) to the facility unit head. See OP § 841.3(IV)(E)(2); [Morris Suppl. Aff. ¶ 7 & Enclosure D]. At SISP, that person is the warden. [Hamilton Aff. ¶ 5]. The warden then must forward the request, along with a recommendation to approve or deny the request, to

the VDOC Faith Review Committee. See OP § 841.3(IV)(E)(4); [Hamilton Aff. ¶ 5]. The committee then provides a recommendation to the Chief of Corrections Operations, who makes the final decision. See OP § 841.3(IV)(E)(5); [Hamilton Aff. ¶ 5]. Satanism is not on the list of religions approved to operate in VDOC facilities. [Morris Suppl. Aff. ¶ 9].

In a supplemental affidavit Counts attests that his inability to practice Satanism while housed in the VDOC has adversely impacted his faith. He avers, for instance, that he has "been separated . . . from my religion . . . for so long that [he has] forgotten important tenets to [his] religion, including . . . The Infernal Names, Invocation to Satan, correct steps to complete a ritual, all the items needed for a ritual, the items and steps to do Satanic Magic, [and] what each infernal name represents." [Counts Suppl. Aff. ¶ 2]. He further avers that he cannot perform individual rituals without the Satanic Bible and Satanic Ritual Bible, because, he attests, those books contain the required steps and items. [Id. ¶ 3].

The parties also have submitted numerous VDOC forms and grievances that Counts submitted purporting to have Satanism authorized for practice in the VDOC. While defendants do not dispute that these materials were filed, as discussed later, they dispute the veracity of some of the content claimed by Counts within them.

First, on November 8, 2017, Counts submitted an informal complaint explaining that he gave Ms. Williams (identified in the amended complaint as a counselor) a declaration of faith form, in which he declares that he wants to practice Satanism. [Counts Mot. for Summ. J., Attach I]. He also requests to purchase numerous religious items, including the Satanic Bible, candles, a cloak, a gong or bell, a chalice, a nude alter figure, and an object to point with, as well to participate weekly in group worship. [Id.]. The chaplain, defendant William Jackson, responded on November 20, 2017, and explains to Counts that he cannot obtain the requested religious

3

property because Satanism is not on the list of religions approved to operate at VDOC facilities. [Id.].

A few weeks later, on December 11, 2017, Counts submitted an offender request form at SISP asking for a religion-authorization form. [Counts Suppl. Aff., Attach 4-A]. The response memorializes that Counts received a "declaration of religious affiliation form" on December 13, 2017. [Id.].

Two months later, on February 7, 2018, Counts submitted an informal complaint to chaplain Jackson, asserting that he gave a religion-authorization form to Sergeant Willis, who advised Counts that the form had been sent to the chaplain five days earlier. [Counts Mot. for Summ. J., Attach. I]. In Jackson's response, he again tells Counts that "Satanism is not among the religions approved to operate in [V]DOC facilities." [Id.]. Jackson does not address Counts's assertion that he sent the chaplain the religion-authorization form. Counts next submitted a regular grievance on February 28, 2018, echoing that he gave the religion-authorization form to Sergeant Willis, who said that the form was sent to the chaplain. [Id., Attach J].

Later that year, on July 16, 2018, Counts directed another informal complaint to chaplain Jackson, explaining that he has been "trying to get Satanic services started" at the prison, and that he has filled out the religion-authorization form, which had been sent to the chaplain, but he has not received a response. [Morris Aff., Enclosure D]. Jackson responded that "Satanism is not among the list of approved religions to operate in the [Virginia] Department of Corrections." [Id.]. The response does not address whether the chaplain had received the form Counts said he sent. Then, on July 31, 2018, Counts submitted a regular grievance that mirrored the informal complaint. [Id.]. In the Level I response, the warden deemed the grievance unfounded because the chaplain had "fully addressed this issue at the informal level." [Id.]. When Counts appealed

4

the Level I response, he reiterated that he had filled out the religion-authorization form and gave it to the chaplain. [Counts Mot. for Summ. J., Attach. E]. The Level II response was denied by defendant Holloway, the Regional Administrator, on September 11, 2018. [Id.] Holloway construed Counts's complaint as having "sent a request form to the Chaplain requesting access to satanic services for [Counts] to practice [his] faith. However [Counts was] denied by the Chaplain." [Id.]. Holloway did not directly address Counts's contention that he had submitted the religion-authorization form.

Counts also has submitted numerous letters he wrote to defendant Clarke, the Director of the VDOC, and warden Hamilton. First, in a letter addressed to Clarke dated December 15, 2017, Counts explains that he has been unable to practice Satanism since his transfer from Wyoming and asks Clarke either to remove the Satanic Bible and Satanic Rituals Bible from the list of banned books, or transfer him back to Wyoming. Counts wrote Clarke another letter dated January 14, 2019, in which he explains that he has "done everything in [his] power to get Satanism started here," including by filling out "several" religion-authorization forms. [Counts Mot. for Summ. J., Attach. F]. Counts also wrote to Clarke in March and October of 2019, mentioning briefly and generically that his rights to exercise his religion were being violated, while principally complaining about other matters. [Id.]. Clarke has not submitted an affidavit to address whether he received these letters.

Counts wrote to warden Hamilton on November 20, 2018—two months after the Level II grievance had been denied. Counts similarly expresses that he has "done everything in [his] power to practice [his] religion," including by filling out the religion-authorization form "several times [with] no response." [Counts Mot. for Summ. J., Attach G]. In January 2019, Counts wrote a follow-up letter to report his "religious situation," declaring that he "find[s] it hard to believe

that you haven't received any of my request forms or the letter I wrote you on 11/20 of last year. [Id.]. Counts wrote the warden again in March of that year, reiterating that he had "filled out all the forms" so that he can practice Satanism. [Id.]. Hamilton's affidavit, discussed in greater detail below, is silent on whether he received any letters from Counts.

*B. Disputed Facts*

Counts has submitted an affidavit in which he avers that, between 2016 and 2018, he sought to have Satanism recognized as a religion at least seven times, each time filling out the request form and placing it in the institutional mailbox. [Counts Aff. ¶¶ 10–11].

Via sworn testimony from chaplain Jackson, warden Hamilton, and religious-advisor Morris, defendants dispute that Counts submitted the religion-authorization form. Jackson avers that he never received a religion-authorization form from Counts, but, if he had, he would have forwarded it to the warden. [Jackson Aff. ¶ 7]. Hamilton attests that records reflect that a religion-authorization form was never received from Counts but, had he received one, he would have forwarded it to the Faith Review Committee. [Hamilton Aff. ¶ 6]. Hamilton adds that he "do[es] not recall talking with Counts at Sussex about his religion," but does not mention whether he received any letters from Counts. [Id.]. Additionally, Morris attests in a supplemental affidavit that no religion-authorization forms have been received—from Counts or any other VDOC inmate—asking the VDOC to authorize Satanism for practice in its facilities. [Morris Suppl. Aff. ¶ 10].

## II. Standard of Review

Both parties move for summary judgment on Counts's religious-exercise claims. [Doc. Nos. 55, 58]. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves

6

judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). In reviewing the motions, "the court views all material evidence to decide whether the undisputed facts could permit a reasonable jury to return a verdict for the plaintiff." Mays v. Sprinkle, 992 F.3d 295, 304 (4th Cir. 2021) (internal emphasis omitted) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

### III. Analysis

In their renewed motion for summary judgment, defendants first argue that summary judgment in their favor is warranted because the undisputed facts fail to demonstrate that the VDOC has substantially burdened Counts's ability to practice Satanism. In support they rely on Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012), in which the Fourth Circuit affirmed the grant of summary judgment to defendants on the prisoner-plaintiff's RLUIPA claim because, the Fourth Circuit concluded, the prisoner-plaintiff's reliance on a "blanket assertion" in the complaint that "sacred items were 'necessary' to perform 'well-established rituals,'" without "identify[ing] those rituals, or explain[ing] why the absence of the sacred items had an impact on the rituals and violated his beliefs," was in sufficient to allow the district court to "evaluate the degree to which [plaintiff's] religious exercise was impaired." Defendants urge that the record here is similarly devoid of sufficient facts for this Court to assess whether Counts's religious exercise has been substantially burdened.

Counts contends that Krieger is distinguishable, and the Court agrees. For claims brought under the First Amendment's Free Exercise Clause and RLUIPA, as a threshold matter, an inmate must demonstrate that: (1) he holds a sincere religious belief, and (2) a prison practice or

7

policy places a substantial burden on his ability to practice his religion." Burke v. Clarke, 842 F. App'x 828, 836 (4th Cir. 2021).

Here, Counts avers that he cannot participate in any individual worship without his religious texts because he needs them to recall the steps he must take and the equipment he needs to perform a Satanic ritual. A person's religious exercise is substantially burdened when there is "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019) (explaining that "substantial burden" has the same meaning for First Amendment and RLUIPA claims). Counts avers that his separation from Satanic texts has caused him to forget its rituals, including the steps and religious items needed for them. This testimony sufficiently distinguishes Counts supposed lack of detail from that in Krieger, and the Court will not fault Counts for omitting details when his testimony establishes that, through no fault of his own, he has forgotten critical details about his faith because of his separation from it. Thus, Counts's sworn testimony establishes that, because he is unable to practice individual worship, the VDOC has required him to modify his behavior and violate his beliefs.

Still, under the First Amendment "a regulation that substantially burdens a practice of sincerely held religious beliefs 'is valid if it is reasonably related to legitimate penological interests.'" Greenhill, 944 F.3d at 253 (emphasis omitted) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). RLUIPA adds on to that protection, providing that "no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest." Carter v. Fleming, 879 F.3d 132, 140 (4th Cir. 2018) (citing 42 U.S.C. § 2000cc-1(a) and Holt v. Hobbs, 574 U.S. 352, 357 (2015)).

Here, Counts does not argue that the official process the VDOC uses for adding religions to the list of authorized religions is unlawful under the First Amendment or RLUIPA. Rather, Counts urges that his attempts to use the official process are being ignored, and so the practice, as applied to him, is not related to a legitimate penological interest, nor is it furthering a compelling governmental interest. Defendants maintain that a religion-authorization form has never been received by any of the officials designated to receive it.

No new evidence has altered the Court's previous conclusion that the parties dispute material facts precluding judgment as a matter of law—principally, whether Counts submitted the appropriate form to have Satanism authorized for practice at the VDOC and whether those requests have been ignored. Counts continues to maintain that he submitted numerous religion-authorization forms. Defendants continue to maintain that none have been received. Although Counts does not dispute that chaplain Jackson and warden Hamilton never actually received a religion-authorization form, the grievance records show that Counts continuously tried to alert the VDOC that he had submitted the forms. None of the responses to Counts's informal complaints and grievances address this issue, despite Counts raising it. From these records, a reasonable juror could infer that VDOC officials were deliberately ignoring Counts's requests. Additionally, Counts has submitted evidence that, outside of the grievance process, he tried to notify warden Hamilton and director Clarke that he had submitted the religion-authorization forms numerous times, but he received no response. None of these officials have testified that they did not receive these letters. Therefore, a reasonable juror could infer that these defendants were on notice that Counts had been trying, unsuccessfully, to avail himself of the official process to have Satanism added to the list of authorized religions, and they, too, were ignoring his efforts to rectify the problem. Ignoring Counts's request has no legitimate governmental

interest, nor does it further a compelling one. Therefore, were a jury to believe Counts's version of events, his religious exercise claims potentially could prevail. Likewise, were a jury to believe defendants' version of events, they potentially could be found not liable. For these reasons, the Court cannot grant either party's motion for summary judgment.

### IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, defendants' motion for summary judgment [Doc No. 58] and plaintiff's motion for summary judgment [Doc. No. 55] each will be denied.

The Clerk is directed to send a copy of this Order to plaintiff and to counsel of record for defendants.

Entered this 16 day of December 2021.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge